TIMOTHY J. RESCH, OSB No. 983317
TResch@SamuelsLaw.com
SAMUELS YOELIN KANTOR LLP
3800 U.S. Bancorp Tower
111 SW Fifth Ave.
Portland, OR 97204
tel:  (503) 226-2966
fax: (503) 222-2937

*Of attorneys for* Defendant Woo Shin "Peter" Lim
        dba The Money Market

ROBERT S. SIMON, OSB No. 901209
Robert@RSSimonlaw.com
The Robert S. Simon Law Firm
PO Box 820035
Portland, OR 97282-1035
tel:  (503) 226-2966
fax: (503) 222-2937

*Of attorneys for* Plaintiff John Carughi

IN THE UNITED STATES DISTRICT COURT OF THE STATE OF OREGON
DISTRICT OF OREGON

| | |
|---|---|
| JOHN CARUGHI,<br><br>　　　　　　Plaintiff,<br><br>　　v.<br><br>THE MONEY MARKET, an assumed business name of WOO SHIN (PETER) LIM; and BEAVERTON PAWN, INC., an Oregon corporation,<br><br>　　　　　　Defendants.<br>_____<br>WOO SHIN ("PETER") LIM, doing business as THE MONEY MARKET,<br><br>　　　　　　Third-Party Plaintiff,<br><br>　　v.<br><br>CARY CARUGHI, individually<br><br>　　　　　　Third-Party Defendant.<br>_____ | Case No. 3:10-cv-0175-BR<br><br>**FINDINGS OF FACT AND CONCLUSIONS OF LAW**<br><br>(TRIAL BY COURT)<br><br>PURSUANT TO: FED. R. CIV. P. 52(A) |

WHEREFORE: The Plaintiff John Carughi, ("Carughi") represented by and through attorney Robert S Simon of The Robert S Simon Law Firm, and the Defendant WOO SHIN (PETER) LIM, doing business as THE MONEY MARKET, ("Money Market") represented by and through Timothy J. Resch of Samuels Yoelin Kantor LLP, tried to the Court the case above captioned on the terms and the issues as set forth in the Pretrial Order (Dkt. No. 119). Third Party Defendant Cary Carughi ("Cary Carughi") stipulated to the entry of Judgment against her. (Dkt. No. 100).

This case comes before the Court as a result of Cary Carughi having pawned numerous antique firearms ("Firearms") owned by Carughi with two (2) Oregon based pawn shops namely Defendants Money Market and Beaverton Pawn Inc., during the years 2008 through 2009. The pawns took place without Carughi's knowledge or consent. Cary Carughi and Carughi were then a married couple and Washington residents at the time of the pawn loans. Cary Carughi ultimately failed to repay the pawn loans, the defendant pawn shops proceeded to implement the statutory process to forfeit the Firearms, and subsequently Carughi filed the action before this Court seeking Replevin of the Firearms against each defendant. A Temporary Restraining Order was entered on February 17, 2010 (Dkt. No. 6), and a Preliminary Injunction was entered on June 22, 2010 (Dkt. No. 36) both of which enjoined the defendants from the alienation of the Firearms pending a further order from the Court.

The case was held in abeyance by the Court pending a final decision as to the ownership of the Firearms which was one object of the divorce proceedings between John Carughi and Cary Carughi. On June 3, 2011, a Decree of Dissolution was entered by the Superior Court of Washington for Clark County, Honorable Judge Scott Collier case number 09-3-02822-0 ("Divorce Decree"). Cary Carughi appealed Judge Collier's ruling. The Washington Court of Appeals upheld the Divorce Decree by an unpublished written decision issued on March 12, 2013. The Mandate from the Court of Appeals returning jurisdiction to the trial court was entered

on April 12, 2013. The Divorce Decree was amended by the court on August 2, 2013 to enter findings of ~~Martial~~ Marital Waste against Cary Carughi and to reduce the spousal support and property divisions previously set forth in the Divorce Decree.

The Court granted the Plaintiff's Motion for Partial Summary Judgment on the Replevin Claim for Relief on June 10, 2013 and ordered the defendants to return the Firearms to the custody and control of Carughi. (Dkt. No. 101). Subsequently, trial commenced before the Court on the sole remaining claims of the Money Market alleged against Carughi for (1) breach of contract for failure to perform certain covenants found in an agreement signed by him on October 24, 2009 ("Agreement"); and (2) unjust enrichment seeking compensation for the value of the services it rendered to Carughi by storing the Firearms.

Carughi defended against the Counterclaims by asserting that no contract was formed by the Agreement as a result of failure of consideration, and in the alternative, that performance of the contract was excused due to illegality at formation, illegality subsequent to formation, and due to the doctrine of Economic Duress. Carughi asserted that if performance were required then the measure of damages was not greater than the sums lost by Money Market, and that Money Market failed to mitigate its damages.

## FINDINGS OF FACT

Having taken the testimony of the witnesses, received the evidence into the record, and heard the arguments of counsel for the parties the Court does find as follows:

This Court has jurisdiction over this case and all parties involved pursuant to 28 U.S.C. § 1332. The parties are citizens of different states and the amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

Money Market operates a pawn shop under the assumed business name "The Money Market." Money Market is the assumed business name of Woo Shin "Peter" Lim who at all times material was an Oregon registered pawnbroker subject to ORS 726.015 et seq. Between

March 2008 and January 2009, Money Market executed a series of pledge loans to Cary Carughi (Carughi's then, now former wife) and/or her adult son Chris Craig with an ultimately combined stated loan amount of $91,500.00 (the "Pledge Loans") exclusive of loan interest and other fees and costs. Money Market, over a period of months, took possession of many unique antique firearms as collateral for the Pledge Loans (the "Firearms").

The Firearms constituted the separate personal property of Carughi at the time of the Pledge Loans as set forth in the Divorce Decree. As of May 6, 2010, the Firearms had an appraised value of between $276,100 and $576,500 based upon the expert appraisal in the record and the agreements of the parties.

The absence of the Firearms from the Carughi marital home and the associated off-site storage was discovered when Carughi returned to Washington from deployment in Iraq as a subcontractor to the United States Department of Defense. He returned on September 27, 2009 and encountered a series of discoveries which caused him to be personally "devastated" according to his testimony. His maritial home was in tax and mortgage foreclosure, his wife was absent and non-responsive to phone calls, his teenage high school student son was without parental supervision, and he discovered that the Firearms were gone.

On October 23, 2009 the Clark County Sheriff's Office contacted both Carughi and Money Market. Carughi testified that he was told by the Sheriff that his Firearms were thought to be at two Portland area pawn shops, the defendants herein.

Carughi contacted the Defendant Beaverton Pawn on October 23, 2009 and was told that the Firearms were forfeited and he was not going to be able to look at them nor would they discuss the return of the Firearms.

Money Market was informed that the Firearms were claimed by Carughi to be stolen and that Carughi would be making contact. Carughi called the Money Market on October 23, 2009 and on Saturday, October 24, 2009, Carughi went to the Money Market for a scheduled

appointment. In that meeting Carughi asserted ownership of all the Firearms, described his own personal circumstances, and sought to recover the Firearms from Money Market through negotiations.

At the October 24, 2009 meeting, Carughi and Money Market executed a document whereby: (1) Carughi agreed to pay Money Market the sum of $150,000.00 in five separate installment payments of $30,000 each; (2) the first payment was to be made "around Feb 15th 2010" and included a schedule of payments to be made "every three months as follows: Feb – to May 15th [;] May 16 to Aug 15th [;] Aug 16 to Dec 15th [;] Dec 16 to March 15th 2011" (3) Money Market agreed not to sell or transfer any of the Firearms pledged as collateral for the Pledge Loans (the "Agreement"). Carughi negotiated with Money Market to obtain the promise not to "sell or transfer" and Money Market negotiated to reach a sum which would satisfy its reasonable investment backed expectation of a return on the pawn loan. It is apparent that both Carughi and Money Market were able to reach a meeting of the minds, with a signed writing which reflects a reasonably clear negotiated result of offer and acceptance.

Consideration is also present in the Agreement. Money Market did not sell or transfer any of the Firearms during the period from October 24, 2009 and February 16, 2010. That restraint was valuable consideration obtained by Carughi as a result of the Agreement. The Money Market consideration for the Agreement was not illusory as claimed by Carughi.

In light of the facts known to both Money Market and Carughi on October 24, 2009 about Carughi's employment situation the imprecision in the payment date does not create an ambiguity fatal to the formation of the Agreement or its enforcement. The payment term was not so imprecise as to be ambiguous or to deprive the Agreement of adequate consideration from the Carughi side. The Carughi consideration was not illusory.

Carughi asserts an affirmative defense of "illegality" at formation and in the alternative that enforcement is barred due to illegality arising through subsequent events. The Court agrees

with Carughi on the latter but not the former.

Illegality did not exist at the time of formation of the contract. The Firearms were not judicially determined to be Carughi's "separate property" as of October 24, 2009 thus the object of the contract at the time of formation was not "illegal." Further, nothing in the events from March 21, 2008 through January 7, 2009 (when the loans were made) led Money Market to believe nor created a good reason for Money Market to believe that the Firearms were the property of another unlawfully obtained. There was no inkling of a problem for Money Market over this period with the Cary Carughi story being persuasive and the supply of Firearms seemingly endless. There was no evidence that Money Market knew or had good reason to know that the Firearms were the separate property of Carughi and that the pawns were unauthorized. In fact there was no reason to suspect anything at all until the Clark County Sheriff contacted Money Market on October 23, 2009 and recounted Carughi's allegations. By his report dated December 1, 2009, Clark County Sheriff's Deputy Jason Granneman indicated that the matter was not criminal, and was a civil matter between Carughi and Cary Carughi. Officer Granneman "requested the firearms and property listed as stolen in the original report be removed from NCIC as stolen by CCSO records."

On October 24, 2013 when the Agreement was formed the mere existence of Carughi's challenge over the ownership of pawned items did not make the Agreement illegal at formation.

However, subsequent illegality as a bar to enforcement of the contract is a meritorious affirmative defense advanced by Carughi and the Court finds in favor of Carughi. The final determination on March 12, 2013 by the Washington courts through the Divorce Case, quieted title in the Firearms for the benefit of Carughi. The Divorce Case is an independent intervening act which had the effect of interposing "subsequent illegality" as a bar to enforcement of the Agreement.

The facts of this case which persuade and inform the Court's decision is the fundamental

unfairness of this Court compelling Carughi to indemnify Money Market against the loss from the pawn loans in which Carughi had no role, culpability or ability to prevent. The Court finds that based on the subsequent rulings in the Divorce Case that Cary Carughi engaged in unlawful conduct when she pawned the Firearms, for which she had no authority to do so.

In the absence of an express statute or rule governing the specific circumstances confronted, and in light of the high level of financial risk, and the unique nature of the collateral and the ownership challenge, Money Market should have sought professional guidance before entering into an agreement with Carughi.

Money Market should have considered an approach which mirrored the regulatory scheme adopted by the Oregon Legislature which encourages the pawnbroker to seek judicial resolution of ownership challenges to the redemption of a pledge. ORS 726.370.[1] The Legislature envisioned the pawnbroker instructing the dueling claimants to seek judicial relief to quiet the title to a pledge, and in the absence of a judicial action within 30 days of the ownership challenge, the pawnbroker was freed to proceed perfect its statutory remedies to the pledge.

The Court finds the statutory scheme in ORS 726.370 analogous to the situation Money Market found itself in on October 24, 2009 when Carughi appeared on the premises challenging the ownership of the Firearms. The Legislature's encouragement of judicial solutions to ownership challenges convinces this Court that the correct expression of the uncodified public policy applicable in this particular fact situation is that the Agreement is against this established public policy.

---

[1] **726.370 Multiple claimants of pledge; interpleader.** If more than one person claims the right to redeem a pledge, the pawnbroker shall incur no liability for refusing to deliver the pledge until the respective rights of the claimants have been adjudicated. In case of an action brought against the pawnbroker for recovery of the pledge, the pawnbroker may as a defense require all known claimants to interplead. If no action is brought against the pawnbroker by either claimant within 30 days after notice of an adverse claim the pawnbroker may proceed to dispose of the pledge as provided in this chapter.

The Court finds in favor of Carughi's affirmative defense of Illegality Subsequent to Formation, and determines the Agreement to be an unenforceable contract.

Carughi asserts the Affirmative Defense of Economic Duress. The defense must establish (1) wrongful acts or threats (by the party seeking to enforce the contract); (2) financial distress caused by the wrongful acts or threats, and (3) the absence of any reasonable alternative to the contract terms presented by the party seeking to enforce the contract. Carughi failed to meet the burden of proof on this Affirmative Defense.

There were no "wrongful acts" which caused Carughi to sign the Agreement. The wrongful acts alleged, such as the premature issuance of all but one of the forfeiture notices, was not a wrongful act directed at Carughi nor was it one which caused Carughi to sign the Agreement. The wrongful acts of Cary Carughi in relationship to the pawns were not the acts of Money Market, nor were these acts the impelling force which caused Carughi to sign the Agreement. In the absence of one of the three required elements of the defense Carughi has failed to prove the defense.

Carughi asserts a defense of failure to mitigate damages. In light of the determination that the Agreement is not enforceable subsequent to formation the Court need not address this defense.

Money Market advances the equitable claim of unjust enrichment and seeks from Carughi the costs of storage for the Firearms. Money Market claims that the period of storage is measured from the day of the first pawn (March 21, 2008) through the day the Firearms were returned to Carughi (May 17, 2013). Money Market seeks storage fees at the rate which pawnbrokers may charge the pledgor as allowed by ORS 726.390(3) for the same period[2]. The sum requested is $25,215 for the total period as measured at the statutory rates.

---

[2] The provisions of ORS 726.390 changed effective January 1, 2010. The relevant change was to substitute the prior storage charge rate of 2% of the loan amount every two months for a new rate which provided for 3% every loan with a minimum of $2 and maximum of $100 for the 60 day period.

The Court finds for Money Market on the Unjust Enrichment claim for relief in the sum of $6,000. Carughi received a valuable service from Money Market when it stored his Firearms. It was a service for which he would have paid others had he obtained custody of the Firearms prior to May 17, 2013, and it is a service for which he now pays $112 per month. There is no claim raised at any point in the testimony that the Firearms suffered injury or damage during the period that they were in the custody and control of Money Market. Therefore, the service is one for which Carughi would otherwise have paid others and was rendered without defect.

The service was also rendered pursuant to orders issued by this Court both in the Temporary Restraining Order and in the Preliminary Injunction. Neither order addresses the burden of the costs of storage. While it is true that Money Market could have sought to relieve itself of the storage duty by returning the Firearms to Carughi at an earlier date it is impractical to consider that scenario in light of the size of the debt to Money Market at issue and the highly portable nature of the Firearms which were the only collateral for the pawn loans. Carughi, in the Agreement, implicitly anticipates having to pay some amount to Money Market for the purpose of holding the Firearms. Carughi admits that he was working outside the United States and would have needed to purchase storage facilities for the Firearms on his own accord during such times. Under these circumstances it would be unjust to confer the benefit of the storage upon Carughi without the companion obligation to pay something for that benefit to Money Market.

The period for applying the storage charge proposed by Carughi is measured from the entry of the Temporary Restraining Order (February 17, 2010) through the return date of May 17, 2013. The rate Carughi proposes is the same rate he pays now in the amount of $112 per month at a commercial storage facility which is open to the public.

The Court determines that equity is best served by measuring the reimbursement period from October 24, 2009 which is the date when Carughi entered into the contract which bound

Money Market to retain the Firearms. The three years, six months, and 23 days is rounded up by the Court to 43 months.

The amount to be assessed against Carughi for the storage service is informed by the statute[3] but not ruled by the statute. The statute addresses the relationship of the pledgor and the pawnbroker. Carughi is not a party to that relationship. The statutory storage charge for the period from October 24, 2009 through December 31, 2009 would have been $915 per month. The amended statute applicable from January 1, 2010 to present places a maximum storage charge per loan of $100 per loan and the loan period to which the charge is applicable is two months. The effective statutory rate is limited to $50 per month maximum charge. The statutory storage charge for the three (3) pawn loans which were outstanding on October 24, 2009 was limited to a combined $150 per month as of January 1, 2010. The Court finds that the fair and just sum is to set a storage rate roughly between the two poles created by the statute and the amount Carughi currently pays for a commercial storage facility. Thus the Court assesses Six Thousand Dollars ($6,000) as the value conferred on Carughi by Money Market for the 43 month period under the Unjust Enrichment claim for relief.

## CONCLUSIONS OF LAW

This Court has jurisdiction to decide the case pursuant to 28 U.S.C. §1332. The Agreement was formed on October 24, 2009 between Money Market and Carughi. There were no defenses proven to the formation of the contract with negotiation, offer, acceptance and consideration exchanged. The Agreement was not illegal when formed because the Firearms were not determined to be stolen property on October 24, 2009.

- **First Counter Claim** (Breach of Contract) – Judgment for Plaintiff John Carughi.

The Agreement, however, is not enforceable in this court due to a subsequent intervening event (the Divorce Decree) which rendered the Agreement illegal when it was determined that

---

[3] ORS 726.390

the Firearms were the separate property of Carughi for which Cary Carughi had no lawful authority to pawn. The illegality is present in the uncodified public policy, through the analogous situation expressly covered by the pawnbroker statutes where there are multiple parties seeking to redeem a pledge.[4] Therefore, the Defendant Money Market is denied relief on its First Counter Claim for Breach of Contract.

- **Second Counter Claim** (Unjust Enrichment) – Judgment for Defendant Money Market.

The benefit bestowed by Money Market on Carughi through the storage of the Firearms is one for which compensation is required. The benefit was of value to Carughi, and it was reasonable to expect that Carughi would have to compensate Money Market for the value bestowed, and it would be unjust to deprive Money Market of fair compensation for the service. He would have needed to pay for the same or similar service had he obtained possession. Therefore, the Defendant Money Market is granted judgment in the sum of $6,000 against Carughi for the Defendant's Second Counterclaim of Unjust Enrichment. The judgment shall earn interest at the statutory rate commencing 30 days after entry into the docket.

Each party shall pay its own costs and fees in this action.

DATED: *September 9, 2013*

*Anna J. Brown*
Hon. Judge Anna Brown

---

[4] ORS 726.370

Submitted By:

| | |
|---|---|
| **SAMUELS YOELIN KANTOR LLP** | **THE ROBERT S. SIMON LAW FIRM** |
| By: */s Timothy J. Resch* <br> TIMOTHY J. RESCH, OSB No. 983317 <br> *TResch@SamuelsLaw.com* <br> tel: (503) 226-2966 <br> fax: (503) 222-2937 | By: */s Robert S. Simon* <br> ROBERT S. SIMON, OSB No. 901209 <br> *Robert@RSSimonLaw.com* <br> tel: (503) 577-3946 <br> fax: N/A |
| *Of attorneys for* Money Market | *Of attorneys for* John Carughi |